May I begin? Good morning. May it please the Court, Andrea Marcus for the appellant K.M. and her family. Her mother and grandmother are here with us today. I'd like to reserve three minutes, please, for rebuttal. At the heart of this case is the importance the IDEA has placed on two things. First, that school districts properly address disability-based behaviors. And second, that school districts don't segregate children in distant facilities because they are disabled without first determining that they cannot be satisfactorily included in their neighborhood school. K.M. asserts her behavior's needs were not met from March 2013, at which point the ALJ and District Court agreed that she was kept from inclusion with the general population, even at lunch and recess, due to behaviors, which included screaming and leaving her class, and the inability to maintain her attention to task. The ALJ and District Court noted that K.M.'s behaviors continued to decline during the period from March 2013 and included development... Ms. Marcus, before you go on reading your argument, I have a question that we may not have appellate jurisdiction in this case because there's no final judgment. You got a judgment on the IDEA claims, but you all filed some kind of joint report with the District Court, preserving all kinds of other claims and staying for the proceedings, right? Yes. There's four or five different claims you have. Yes, there stayed pending the outcome of the IDEA claims here. And you never got a Rule 54B determination, so I don't see a final judgment that complies with Section 1291, and we only have jurisdiction over appeals from a final judgment. A final judgment usually means a judgment that determines all claims of all parties. What's your response to that? Well, the District Court's determination on the IDEA claims were definitely a final judgment. Determination on what? The IDEA claims. Oh, of course, yeah. Okay, let's assume that, but there's still all kinds of other claims pending in the District Court. Right. 1983, 1985, ADA, Rehabilitation Act, right? You know... Yes, that's correct, Your Honor. The judge's thinking and the party's thinking was that because a lot of the same facts... It doesn't matter what they're thinking, the question is, is there a final judgment in this case? Yes, I believe there is. And why? Show me a judgment that disposes of all claims of all parties. That we do not have. That was not done? No. All right. Only the IDEA claims. As the two matters, the non-IDEA claims and the IDEA claims were bifurcated. I don't think you can do what you've been trying to do, is, you know, appeal only the IDEA claims. But go ahead and finish your argument. Let me ask you another kind of procedural argument. It seems like you may have waived certain claims with respect to the first issue on appeal, and that is whether the District Court failed to provide KM a fate for the 12 Let me ask you, because it appears to me the only time period litigated in the District Court was September 2013 to March 2014. Is that correct? I'm sorry, September 2013, you said? Yes. No, that's not correct, actually. And I'm remiss because my hard copies, so I can cite to the At the District Court level, in our briefing, we did discuss the fact that the ALJ's determination with regards to the March 2013 IEP were remiss because they did not apply the same rules that she did when analyzing the March 2014 IEP. So yes, those were preserved at the District Court level. But did the District Court, did you ask the court to make a determination regarding that? Yes. Okay. The ALJ and District Court committed clear error in excusing the District's failure to assess KM's increasing behavior for over a year. Number one, by interpreting California law at the time to only require assessment when a child's behavior became assaultive or involved property damage, while ignoring stated federal law which required assessing the child's behavior problems as soon as it interfered with learning and thereby violating the Supremacy Clause. The next clear error of law was interpreting California law at the time to only require conducting assessment of problematic behavior once an IEP team had met, again ignoring the federal mandate that an IEP team meeting be called or that the behavior be assessed as soon as it was determined that the behavior was interfering with the child's education. And then finally, excusing the school district from assessing KM's increasing behaviors for over a year as the behaviors might get better on their own. There simply is no legal basis for excusing the District's addressing her behavior until the next scheduled IEP and neither the District Court nor the ALJ cited any. Why was it unreasonable, if this is the time period you're talking about, I think you're talking about, why was it unreasonable for the District to see how KM would progress after the 2013 incident, the choking incident? Well, there's multiple factual reasons. The basic one is that IEP really didn't change much. The opposition has made a point to show out that there were new goals but there weren't any significant supports or services or any measurement of any supports or services that were offered to support new goals. So in essence, they were offering the same thing. I think the ALJ placed a lot of importance on the fact that there would now be a permanent teacher in the classroom. But most importantly, the statute does not provide that you need to assess and address behaviors in a systematic manner unless you think they might get better on their own. Yeah, but it seemed like the ALJ noted that in December of 2013, KM began to communicate much more. On January 10, 2014, the District sent KM's progress report describing KM's progress on her goals, her communication, writing, reading, math, and social-emotional goals. So it seems like one of your main arguments is that there was some delay in not putting, amending the plan or getting together for another plan, or that the District didn't do enough. And I'm just trying to figure out why, I mean, how much, what the District did here was try to assess what, how the student was progressing, and I'm trying to see how that was unreasonable. It was unreasonable because what we have is anecdotal assertions that for the snapshot in time during December, her behaviors were better. In other parts of the ALJ's decision, she also notes that the child at this point was screaming, crying, was hitting, kicking, and also required segregation. She shouldn't, it was the IEP team, even at the March 2013 IEP, had already determined that she shouldn't be integrated with other children because of her behavior. Again, once those types of behaviors are being acknowledged, regardless of what the California statute said at the time, the federal law requires, and the ALJ and District Court, or the ALJ at least, acknowledged the federal regulations required that the assessment be conducted for behavior. So what relief are you seeking here today? At this point, what we are seeking is some compensatory education, some instruction to make up for the two years period of time that she was not allowed to attend school or during which she attended school and was not able to focus or attend a task because she was running away from the class or she was spending the time kicking or screaming and alienating herself from her peers with her unmitigated autistic behavior. And the two years you're referring to would be? From, roughly from the March 2013 through March, the entire period at issue, the statutory period, meaning roughly from March 2013 to March 2015. And another thing that was a real error of law here was that the ALJ and the District Court considered timelines according to when an IEP was held as opposed to what's necessary under the law, which is when a child demonstrates that they're not responding positively to the IEP, you're supposed to change the IEP. I do really quickly want to... Does it say what, within how many days? I mean, or, I mean... Well, the assumption is immediately. As soon as it's determined that the IEP is not working to get together and assess how to change that, which implies assessment, and under this Court's holding in Timothy O., it absolutely requires assessment. It should not just be determined according to a thought that maybe if we get a new teacher, her autism will mitigate itself. I just would really like to very quickly discuss the errors with regards to the least restrictive environment. It was clear error of law where the District Court improperly upheld the ALJ's determination that the appropriateness of the proposed stock deal placement could be proven without first analyzing whether KM could be properly supported in her least restrictive placement at Cummings, her neighborhood school. The statute is really clear that the least restrictive environment for a child is her neighborhood school. This little girl had the right to go to her neighborhood school and be supported with the behavior intervention plan or behavior support plan that the whole IEP team had not only agreed was necessary for her, but conducted for her. It was analyzed for her home school placement, and then once it was finished, the IEP team, and there is no determination otherwise, the IEP team refused to consider allowing her to use it in her home school. Instead, they proposed stock deal. I would like to reserve time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Jack Clark, and I am co-counsel with Darren Bogey. We represent the appellee to Hatchview Unified School District. I will be speaking to the Court for approximately seven minutes to address the burden of proof argument related to the least restrictive environment theory proposed by Appellant, and then I will reserve the rest of my time for Mr. Bogey to speak to the Court. I'd like to put my analysis in context. Much of Appellant's argument seems to make linear assumptions in terms of education. Who's best prepared to address the issue that Justice Schema raised? Mr. Bogey would like to address that. I wonder if maybe you all should switch in your presentations. Thank you, Your Honor. With regard to the position as to whether or not there's a final judgment, although there has been a ruling on the IDEA issues, it is the defendant's position that there is not. State your appearance. Yes, Darren Bogey for the Hatchview Unified School District. It's our position that there was no final judgment, and in light of the fact that what you're dealing with is the same nucleus of facts that stem from the IDEA claim and these other claims relating to her issues brought up with the educational programming, we believe that it is improper to have an appeal at this point. There should be a final judgment on all issues because everything is so intertwined. Of course, you didn't object on that basis in your brief, did you? No, Your Honor. But we do have a case that is still set for trial in the district court on the non-IDEA claims regarding the 504 issues and 1983 issues, etc. So your position right now is that there is no final judgment? That would be our position, yes. And I would say that these issues are so factually intertwined that I don't see how there could be a final judgment with regard to all issues presented in the other arenas. This is not a discrete case where you're looking for 504 of the IDEA. It's intertwined with programming, not in a case that would deal with a discrete 504 issue or discrete issue of discrimination under color of law. If I may, I would like to address the issue of behavior. I do not believe that appellant raised the issue of the behavior plan in the context she's bringing it now. At the time, there was no, in the original administrative hearing, there was no issue involving a denial of FAPE for inappropriate public education by failure to call an IEP team meeting in a meaningful time. Also, if you look at the administrative law judge's record, part of what is shown is at the time after the student was attacked by a fellow student, there was a big flux of who the teacher would be. It was an unstable environment. If we look at a behavior, behavior can be, and it is contemplated under the IDEA, behavior supports are not just a behavior plan but can be embedded through strategic teaching or until they had a permanent teacher to see if the embedded behavior supports would have a positive effect or negative effect. In that sense, I believe the ALJ's finding was highly supported by the record. After the August 2013 choking incident, what steps did the district take to they found a permanent teacher who was credentialed. I believe in the record the teacher did try to work with her. They did give her aid support. If we're looking at the period from the choking until March, now, at the March IEP, I believe the judge was correct at that time and it is well taken on the ALJ's finding that the team should have done something different, but you're looking at a classroom that's being stabilized and changed. At March, the plan is being revisited and you can look at her progression in total. Another thing to keep in mind, and this goes into least restrictive environment. So the March to the November, I guess, period, that's what the ALJ and the district court have found to be where she was denied the FAPE. Is that correct? Well, the denial of FAPE was at the March meeting when they did not agree to implement a behavior plan at that time. There was no allegation that FAPE was denied. There was no issue brought forward by student at the time that FAPE was denied by failure to call a meeting. And I would remind the court that at the administrative level in due process cases, the student gets to frame their issues. So what she's bringing up now is her argument was never litigated by the administrative judge or at the district court because now her theory has changed and was not originally brought before the tribunal. But if I may, before I give time to co-counsel, one thing the court should keep in mind is the student's behaviors were not the only reason for the and Dr. Hayden recommended a uniform categorical classroom of students with a like disability, a teacher with autism experience, implementing discrete trial training. And that was taken from students' own experts at the administrative hearing. That placement did not exist at the school district within the boundaries of the school. And this court has found before that if a child needs to be translated, you know, under the Poolaw case, the Ninth Circuit has found that 250 miles is appropriate if that's where the services are. We're dealing with a rural school district in a rural county that's approximately the size of New Jersey. In the record, it was noted that general education students in the district sometimes ride within the district boundaries a bus ride of an hour. So her transportation was not out of line in the geographic context of the district as to what was available. With regard to the claim that the district failed to consider continuing the child in her neighborhood school, is that an accurate characterization of what happened? I don't believe it is and I don't believe it's supported by the evidence because there is more than one need driving the Stockdale decision. There were the behavioral needs and it's quite clear from the record she has very intensive behavioral needs, but she also had processing issues, other issues that required a very structured environment, curriculum broken down in a very particular way. Students' own experts conceded she needed a placement with an autism-specialized teacher. All of these things contributed to the decision to move her. So it's not just the behavior plan as opposing counsel tries to linearly assert. You have to look at the IEP in total and I think the ALJ did a very good job of that at hearing. You're dealing with a hearing that has over 77, I believe 70 pages of very detailed findings and a very methodical district court review of the errors that were alleged at the time. This is a case where you cannot just, they didn't try the, you know, it's not a case of where you can say the district didn't try a behavior plan. They should have. There were a lot of components that were required for the student's education plan, the behavior being one of them. And then I do not believe there's any case law or statute that supports you have to try it in the home school. In fact, if you look at the reg, it's 34 CFR 300-116 and I believe it's C or E, I apologize, unless the IEP plan specifies otherwise it shall be the home school for disabled students. Well, this was an IEP that specified otherwise due to a high level of need. And if, I'd like to give the balance of my time if, unless there's any direct questions to me. I won't necessarily be brief, Your Honors. In response to the question was just add, I would just leverage what my co-counsel stated by referring to the court to the administrative law judge's decision at page 68, where the administrative law judge made very detailed findings regarding the reason why a general education classroom would not be appropriate. As counsel noted, the reasons why a general education classroom would not be appropriate. Those reasons included deficits in processing information, working memory, attention. And then she went on after a very detailed analysis to make this point. There was no evidence pertaining to the fourth Rachel H. element, which was a relevant cost. But then she said, however, the evidence on the other factors demonstrated that the student could only be in a general environment if she were off by herself with a one-to-one behavioral aid, helping her to manage her behaviors with assistance, behavioral support plan, and providing discrete trial training. This would turn the general education environment into a more restrictive environment. So in answer to your question, there were very detailed findings as to why the general education environment was not appropriate for her at that time. And that's why the Stockdale program was necessary for her. And when did the IEP team begin to consider the alternative school? Because I mean, that's one of the issues, was the timing. In 2015, Your Honor. It was in February of 2015. The administrative law judge noted there was a detailed discussion concerning that. And then it was offered in 2015 when the child was removed from school. And was that the appropriate time? Yes. Why? Because it seems like that's what's being challenged, and I'd like to know. Yes, it was, because the school had been working very diligently through alternative means, through assessment for speech and language, through assessment for psychoeducational evaluation, through assessment for occupational therapy, through additional behavioral interventions, including with the assistance of the parent hired, behavioral assistants who tried to make her successful in the general education environment. That was what the law required, and that's what the school did. My final point, Your Honor, in the few minutes I have, is that there's been a continued effort at both the administrative level and the district court level to water down Schaefer v. Wiest, a 2005 U.S. Supreme Court case which said that the party bringing the action has the burden of proof. The district court made a complete legal analysis of this, which was correct. And in fact, the decision which was relied upon by the appellant, the L.E. v. Ramsey case of the, I believe the Third Circuit, made a detailed analysis and said that Schaefer v. Wiest is still good law. I would point out that they are now for the first time, and we would ask the court to grant our motion to exclude the information that was not raised below, and that is on file. We did make the point that Education Code 56346 does not in any way, which simply has to do with the obligation of school districts when there's a need to implement an IEP, to implement the IEP within a reasonable time, that in no way, by its terms, under any form of statutory construction could suggest that the California legislature in any way affected the burden of proof in IDEA cases. Unless there are any other questions, Your Honor, thank you for your time. Okay, thank you. Thank you. I would like to, as quickly as possible, address a few notes. Would you just pull the mic down just a little bit? Oh, sorry. I'm shorter than everybody else. There was no evidence and no finding that implementing the behavior intervention plan designed for my client had been considered for her neighborhood school before moving her. Also, it was never an issue for KM that full-time integration into general education be compared to the Stockdale placement. The ALJ and the district court both misapplied Rachel H. to a fact scenario not at issue in this case. My client merely wanted to stay in her neighborhood school, have ABA aid support, and be integrated and provided with a new behavior plan. Are you saying that the agreed-upon plan was available in the neighborhood school? It was designed. Behavior plans are actually an analysis of the child's environment as well as child's behavioral responses to the environment. The entire plan was designed to keep her in her neighborhood school. And once it was finally completed, the district said no. She wouldn't be able to even try it in her school. Actually, they didn't even consider trying it in her neighborhood school. Her parents went to a series of IEPs, December, January, and February, December of 2014, January and February of 2015. As of the first day they were there, the assessments that opposing counsel referred to were discussed. Then the assessors who had done all the analysis of the child weren't invited back to discuss placement. The only placement that was discussed was shipping her off to the remote facility in another district. Isn't there evidence that the people who were involved in that process talked about how the child's needs could not be met in her neighborhood school? It was the position of the district that her needs could not be met there, correct? I think it was definitely the position of the administration. It was not the position of the family or the people who had actually conducted the behavior intervention plan. To be clear, you're not suggesting that the administration did not consider the feasibility of keeping her in her neighborhood school? I am actually suggesting that, absolutely. So you think that they simply asserted that her needs could not be met there without even considering the question? Exactly. And one thing that's really in smoke and mirrors here is that the record alludes to the contrary, is a list of placements available in the district were read from a document and none of them were analyzed for whether or not those would be suitable for my client, and particularly not with any additional support. If I could just point out one more thing. But you said that that didn't satisfy, I guess, the Rachel H. factor, or the first Rachel H. factor. If I understand your argument, that the district failed to compare the benefits of the general education classrooms with supplemental aids and services? No, actually, Your Honor, let me correct that because it's a really important thing here. What the district court and ALJ did was they compared my client being full-time in general education and being sent off to Stockdale. All my client wanted was her special day class, some integration into general education in her home school with her new behavior plan and appropriate behavior supports, and not to be sent off to a remote facility where she would lose her home ABA program providing treatment for her autism. Because ALJ, I think it was page 33 of the decision, noted that in January of 2015 at the IEP meeting, the district director of student services described a continuum of placements for KM to the IEP team. No, what happened was she read a list of placements that the district had available. There was no analysis of how my client could be supported in any of them. And it's important, opposing counsel stated that our experts, Dr. Gilbertson and Dr. Hayden, described a placement just like that in Stockdale, a homogeneous small autism classroom. It's very important to note that they, first of all, they recommended that for a part of her day. And Dr. Gilbertson, our expert, was the only person at hearing or at the IEP meetings other than KM's mother here today who had ever seen both placements. There was no analysis of how to keep her in the neighborhood school. So your own experts, though, did say that there was a need for a structured environment. A structured environment is a very amorphous term in education. They've described their own program at Cummings as a structured program. The Stockdale at the- But it seemed that what they were describing was something similar to what Stockdale provided. And I guess you're arguing, well, even if they did, that was only for part of the day. I'm trying to figure out how that would work. Oh, I see. I see what you're asking. The classroom at the Cummings School House in her neighborhood school, that was also a very structured setting. They had embedded programs. And, in fact, that's their excuse for not drafting a behavior plan earlier, that there were embedded supports in the classroom. It was a structured setting. The district certainly just cannot be justified in not assessing my client and not serving her needs because they had a chaotic classroom that exacerbated her behaviors. And then once they got to putting together a behavior plan, only offered to send her elsewhere. Just for purposes of clarification, is it your position that a categorical classroom for students with autism was available at Cummings? It's my position that no. And it's also our position that, first, her least restrictive environment had to be considered. Second, there was no evidence that a categorical classroom was beneficial to her. When the expert from the county was asked that question, and it's in the record and referred to, all he could say was that it was easier because all the kids could get the same programming. That sounds like it's appropriate for the district, not the individual needs of my client. That was never assessed. So, in this case, the family was not seeking a categorical classroom? No. And it's contrary to all the science. If you stick a bunch of autistic children who are noncommunicative together, they don't learn to communicate and they don't learn typical behaviors. It's logical. Are you claiming that the district was obliged to place KM in the regular general education classroom for academic? Never. No, no, that was never, never, never our case. Again, the district court and the ALJ, I don't know where they got this comparison. They compared placing KM all day in a general education setting to, albeit the structured classroom setting of Stockdale, structured just like her special day class in her neighborhood school, which is where she sought to remain. Thank you. Thank you very much. Thank you for your oral argument presentations today. The case of Markman v. Tehachapi Unified School District and Kathleen Siciliani is submitted. Thank you.
judges: Tashima, Murguia, Chatigny